UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LUCIAN ROBERT DEAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 1:12-cv-00509-TWP-MJD |
| CAROLYN COLVIN ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. | |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Lucian R. Dean ("Mr. Dean") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").[1]  For the reasons set forth below, the Court **AFFIRMS** the Commissioner's decision.

### I.  BACKGROUND

**A. Procedural History**

On August 8, 2008, Mr. Dean filed an application for DIB, alleging a disability onset date of August 8, 2008.  Mr. Dean's application was denied initially on January 16, 2009, and upon reconsideration on March 10, 2009.  Thereafter, Mr. Dean filed a written request for a hearing, and a hearing was held before Administrative Law Judge Monica LaPolt (the "ALJ") on

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted decisions.

September 22, 2010.  Mr. Dean was represented by attorney Amy Van Ostrand-Fakehany at the hearing.  On November 23, 2010, the ALJ denied Mr. Dean's application.  On February 15, 2012, the Appeals Council denied Mr. Dean's request for review of the ALJ's decision, thus making it the final decision of Commissioner for purposes of judicial review.  Mr. Dean filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.  Factual Background**

Mr. Dean was a 52-year old resident of Monroe County, Indiana at the time of the ALJ's decision. Mr. Dean never attended high school, but he received his GED through the Army Reserve.  He was a member of the Maryland Army National Guard from 1986 to 1999, and his highest rank held was Platoon Sergeant.  Mr. Dean has suffered from a range of severe medical impairments, including Asperger Syndrome.  He was diagnosed with Asperger Syndrome in 2009, and his diagnosis was confirmed in 2010 by Ms. Stine Levy, M.S ("Ms. Levy").[2] According to Ms. Levy, there is a high probability that Mr. Dean was born with Asperger Syndrome, but this disability was not recognized by the Diagnostic and Statistical Manual of Mental Disorders until 1994 when Mr. Dean was 36 years-old.  Ms. Levy primarily worked with Mr. Dean on his relationship and communication problems with his wife, Cheryl Dean.  Dr. Michael Monahan, PhD ("Dr. Monahan"), was the psychologist who signed off on Ms. Levy's medical documentation, but did not actually treat Mr. Dean.

Mr. Dean's self-isolation has affected his relationships.  He stays in his room with the door locked for almost twenty-four hours per day and only has contact with his wife, usually via e-mail.  Mrs. Dean has chosen to live separately from Mr. Dean due to his self-imposed isolation.  Mr. Dean and his ex-wife had a very similar relationship, and his children have

---

[2] The ALJ also refers to Ms. Levy as "Ms. Stine," which the Court presumes is a typographical error and will refer to her as Ms. Levy.

refused to contact him because they feel he abandoned them. Mr. Dean has one friend who lives in West Virginia, but they contact each other only a couple of times per year and primarily discussed the military.

Asperger Syndrome has also affected Mr. Dean's ability to communicate and interact socially. Even though Mr. Dean retired from the Army Reserve in 1999, he has still been obsessed with the Army. He continues to dress in military uniform, including to the disability hearing, and researches and reads about Army-related issues; most of his communications are limited to the subject of the military. Mr. Dean also does not cope well with stress and stressful situations, and he has trouble making decisions. For example, instead of taking his wife's critically injured dog to the veterinarian, Mr. Dean left the dog in the car to die while going to the emergency room for a minor dog bite on his hand. Mr. Dean's wife has to go with him to his doctor's appointments because he will not ask the doctor any questions.

Mr. Dean previously worked as an arborist for the University of Maryland at College Park ("UMCP") grounds, which required him to operate heavy equipment and did not require him to socialize with others. While working for the UMCP, Mr. Dean was involved in a bucket truck accident in 1997, which has limited his ability to function. In the accident, a tree fell on him and crushed his right wrist and the back of his right hand. Mr. Dean has had fourteen surgeries to repair the damage. On October 6, 2005, Mr. Dean told his physician that his right wrist is immobile, and two plates are in his left arm which prevents him from rotating his arm. The right and left iliac crests in his hip bones were donor sites for the bone required for the surgeries on his arms due to the accident, so Mr. Dean has experienced pain in his hips. After not being able to meet the physical demands at UMCP, Mr. Dean held several, shorter-term jobs, which have included being a truck driver and a bus driver. Before Mr. Dean's accident, he used

to enjoy rappelling, but he had to stop because he experienced pain in his arms. Mr. Dean stated that his hobbies include rappelling, hiking, target shooting, and building, but he is able to only do target shooting, which is too painful to do frequently.

Mr. Dean also has degenerative joint disorder in both feet from injuries sustained during an exercise during his final years in the military. In August 2008, Mr. Dean had prosthetic joint replacement surgery in both feet. Mr. Dean has continued to experience pain in both feet. He cannot kneel nor climb up stairs without experiencing pain. Mr. Dean is limited when it comes to bending, and he cannot squat. He has used a cane, crutches, and a brace to help his mobility following his joint replacement surgery. Although he used a cane at the hearing, he was not using a cane regularly in 2010. Mr. Dean used to help prepare meals, but he claims he can no longer stand on his feet long enough to prepare his meals. He is now limited to snacks and microwavable meals, including military meals he purchases online.

## II.   DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At

step two, if the claimant does not have a "severe" impairment (i.e. one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Mr. Dean met the insured status requirement of the Act for DIB through December 31, 2010. At step one, the ALJ found that Mr. Dean's work activity after the onset date did not rise to the level of substantial gainful activity, and that he has not engaged in substantial gainful activity since August 8, 2008. At step two, the ALJ found that Mr. Dean has the following severe impairments: history of upper extremity injuries requiring surgical intervention, mild carpal tunnel syndrome in his left wrist, history of joint replacement in his two great toes, and Asperger Syndrome. The ALJ also found that Mr. Dean has the following non-severe impairments: history of alcohol abuse, history of myocardial infarction, and sleep apnea. At step three, the ALJ found that Mr. Dean does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Mr. Dean has the residual functional capacity to perform light work, except with no more than occasional balancing, crouching, crawling, and climbing of ramps, stairs, ladders, ropes, and scaffolds, only frequent handling and fine manipulation with his bilateral upper extremities, and no transactional interaction with the public. At step four, the ALJ determined that Mr. Dean is capable of

performing his past relevant work as a truck driver, thus finding that Mr. Dean is not disabled for purposes of the Act from his alleged onset date through the date of the ALJ's decision.

## IV. DISCUSSION

Mr. Dean raises four issues in his appeal that he claims constitute reversible error. First, Mr. Dean argues that the ALJ disregarded clinical evidence regarding his Asperger Syndrome, which proves that his impairment meets or equals Listing 12.10 (Autistic disorder and other pervasive developmental disorders). Second, Mr. Dean argues that the ALJ failed to address multiple medical opinions regarding his residual functional capacity ("RFC") provided by podiatrist Dr. Matthew Parmenter ("Dr. Parmenter"), Ms. Levy and Dr. Monahan, and Jennifer Chadwick, LMHC ("Ms. Chadwick"). Third, he argues that the ALJ ignored the vocational expert's ("VE") opinion, who testified that the RFC provided by Mr. Dean's physician, Dr. Parmenter, along with Mr. Dean's testimony regarding his restrictions, would prevent him from working. Fourth, he argues that the ALJ did not follow 20 C.F.R. §§ 404.940 and 416.1440 when she used extrajudicial sources, including her husband's military experience and an internet search, to evaluate Mr. Dean's claim and developed the record improperly.

**A. The ALJ supported her step 3 determination with substantial evidence.**

Mr. Dean argues that the ALJ ignored evidence regarding his Asperger Syndrome that supports a finding that his impairment meets or equals Listing 12.10, and argues that her analysis was flawed in two respects. First, Mr. Dean claims that the ALJ noted only the evidence that supports her decision that he is not disabled. Second, Mr. Dean claims that the ALJ ignored substantial evidence that his impairment meets or medically equals Listing 12.10. However, the ALJ does not have to mention "every piece of testimony and evidence submitted." *Carlson*, 999 F.2d at 181. The Court must remand this case if the ALJ's opinion "fails to mention highly

pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker*, 597 F.3d at 921 (citations omitted).

Mr. Dean argues that the ALJ only noted evidence that supported her decision and did not accurately characterize evidence regarding Mr. Dean's hobbies and activities. Mr. Dean argues that the ALJ discussed testimony that his hobbies included rappelling, hiking, target shooting, kayaking, and GPS treasure hunts, but that the she failed to mention that Mr. Dean has not done rappelling or target shooting since his alleged onset date, that he has only kayaked once, and that only his wife participates in GPS treasure hunting. However, the ALJ did note that Mr. Dean reported that he only target shoots now, and that most of his limitations in various activities appear to be limited by his physical impairments, not his mental impairments. R. at 17. Thus, the ALJ did address these facts in her analysis, but the evidence supports findings regarding Mr. Dean's physical limitations, not that his impairment meets Listing 12.10. The Court finds that the ALJ did not mischaracterize the evidence regarding Mr. Dean's activities.

Mr. Dean also argues that the ALJ ignored evidence in the record that supports a finding that his Asperger Syndrome meets or equals Listing 12.10. First, Mr. Dean argues that the ALJ ignored a 2008 report provided by Tim Kilgore of the Truck Driver Institute that indicates Mr. Dean has marked restrictions in maintaining social functioning. Mr. Dean argues that the ALJ ignored evidence that he had problems with other trainees, required extra supervision, had difficulty following verbal instructions, had difficulty resolving problems, and ultimately was not hired because of his inability to relate to prospective employers. R. at 283-86. However, the ALJ did state that Mr. Dean completed truck driving school and cited to Mr. Kilgore's report, and further acknowledged that Mr. Dean "did have some problems understanding or following

8

instructions but only to the extent that he required the instructions several times before understanding." R. at 23. Therefore, the Court finds that the ALJ did not ignore this record.

Second, Mr. Dean claims that the ALJ ignored Mrs. Dean's testimony indicating that he has marked difficulty with maintaining social functioning and with concentration, persistence or pace. He argues that the ALJ ignored Mrs. Dean's testimony that they did not live together because of Mr. Dean's self-imposed isolation and obsession with the military. The testimony also states that Mr. Dean was unable to live with his first wife and children either. She also testified that he is unable to cope with stress, he has a notifying device on his bedroom door so nobody can surprise him and cause him to react violently, and has difficulty with following simple instructions. However, the ALJ did mention Mr. Dean's self-imposed isolation and his family's refusal to deal with him as a result. R. at 18. The ALJ noted Mrs. Dean's testimony that she and Mr. Dean were involved in the same "vertical community" and that Mr. Dean was a "genius in the field" of rappelling. R. at 25. The ALJ used this testimony to support her finding that Mr. Dean only had moderate limitations with social interaction, and stated that it is inconsistent with the claim that Mr. Dean's Asperger Syndrome has made him "unable to sustain the mental components of work activities" due to the complexity of rappelling events. R. at 25. Thus, the Court finds that the ALJ adequately considered Mrs. Dean's entire testimony in supporting her conclusions about Mr. Dean's limitations with social functioning and concentration, persistence, or pace.

Third, Mr. Dean argues that the ALJ ignored testimony from Mrs. Dean that shows he has marked restrictions in activities of daily living. Mr. Dean claims that Mrs. Dean's testimony that he allowed her dog to die while instead seeking treatment for a superficial bite wound demonstrates such limitations. However, the ALJ supported her finding that Mr. Dean has only

mild limitations in activities of daily living by citing to evidence that he is able to take care of his personal needs and grooming, he watches television, uses a computer, cleans, only needs some reminders to take medication, and he has structured a daily routine for himself.  R. at 17-18.  The ALJ also stated that Mr. Dean's daily activities appear to be limited by his physical impairments, not his Asperger Syndrome.  R. at 18.  Section 12.00 of the Listing of Impairments states that activities of daily living include "adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. § 404 app. 1.  Caring for pets does not appear to be the type of activity that would fall within this definition.  The Court finds that the ALJ adequately supported her finding that Mr. Dean's activities of daily living are only mildly affected with appropriate citations to the evidence.

Fourth, Mr. Dean claims that the ALJ ignored Ms. Levy's and Dr. Monahan's psychotherapy evidence regarding the impact of Asperger Syndrome on Mr. Dean's ability to interact with others, ability to engage easily and appropriately in communicative acts, and ability to be flexible and deal with unanticipated changes.  R. at 758.  It is reversible error if an ALJ fails to explain why he or she refuses to give a medical source any weight.  *Walters v. Astrue*, 444 F. App'x 913, 914 (7th Cir. 2011).   An ALJ may ignore a medical opinion if it is inconsistent with the treating records and states why he or she is rejecting the evidence.  *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).  In her residual functional capacity analysis, the ALJ stated that she declined to accept the opinions of Ms. Levy and Dr. Monahan because they were inconsistent with Ms. Levy's own treatment records.  R. at 24.  Ms. Levy opined that Mr. Dean's Asperger Syndrome became "severe enough to warrant significant limitations 'shortly after birth'" *Id.*  The ALJ noted that this opinion is inconsistent with his history of work

10

activities, including his time in the National Guard and as an arborist and truck driver, and inconsistent with his previous rappelling activities, which he had to give up due to his physical limitations and not his mental limitations. R. at 25. Ms. Levy's opinion also acknowledges that Mr. Dean engaged in these activities, despite her claims that he has been limited by Asperger Syndrome his entire life. R. at 759. The ALJ also stated that she rejected the opinion of Dr. Monahan, as he was only the supervising psychologist who signed Ms. Levy's report, and there is no indication that he had any treatment relationship with Mr. Dean. *Id.* The Court finds that the ALJ adequately explained why she rejected the treating source opinions of Ms. Levy and Dr. Monahan.

The Court concludes that the ALJ adequately addressed the evidence in her analysis cited by Mr. Dean, and further finds that she adequately supported her step 3 findings with substantial evidence.

**B. The ALJ adequately addressed Mr. Dean's treating source opinions in the RFC determination.**

Mr. Dean argues that the ALJ's decision was unsupported by substantial evidence at step 4 because she ignored the RFC assessments of Dr. Parmenter, Ms. Levy and Dr. Monahan, and Ms. Chadwick. Dr. Parmenter determined that Mr. Dean can stand and walk for less than two hours, cannot climb, balance or crawl, can occasionally kneel and crouch, and must miss at least four days of work per month. Ms. Levy and Dr. Monahan stated that Mr. Dean's Asperger Syndrome limits his ability to socially interact with others. Ms. Chadwick stated that Mr. Dean "could not work a standard 40 hour week and would need a job with low levels of stress and limited access to people." R. at 24.

When evaluating opinion evidence, the ALJ must give controlling weight to the opinions of treating sources if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); Social Security Ruling 96-2p. However, opinions regarding a claimant's residual functional capacity are not considered medical opinions, but are instead opinions on issues reserved to the Commissioner because they are administrative findings. 20 C.F.R. § 404.1527(d)(2). The ALJ is not required to give any special significance to the source of an opinion on issues reserved to the Commissioner, including the RFC. 20 C.F.R. § 404.1527(d)(3); *see also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.")

Mr. Dean's extensive arguments ignore the fact that under 20 C.F.R. § 404.1527(d), the ALJ was not required to give any special weight to the assessment of Mr. Dean's RFC provided by Ms. Levy, Dr. Monohan, Dr. Parmenter, and Ms. Chadwick because they are not considered "medical opinions." Rather, they are opinions on an administrative finding that is reserved to the Commissioner. Nevertheless, the ALJ does state why she did not give persuasive weight to these treating sources' opinions. As discussed above, the ALJ adequately explained her reasons for disregarding the medical opinions of Ms. Levy and Dr. Monahan, and for similar reasons she disregarded the opinion of Ms. Chadwick. R. at 24-25.

Contrary to Mr. Dean's argument that the ALJ "summarily concluded" that she could not assign persuasive weight to Dr. Parmenter's opinion that Mr. Dean is disabled, the ALJ devotes almost half a page of her analysis to explaining why she disregarded his opinion.[3] R. at 24. Dr. Parmenter's opinion that Mr. Dean is "disabled" is contradicted by his own treating notes that

---

[3] The Court notes that Mr. Dean misleadingly omitted the last three words of the quoted language from the ALJ's opinion, which states in full "I cannot assign persuasive weight to Dr. Parmenter's opinions *for several reasons*." R. at 23 (emphasis added).

12

indicate that Mr. Dean returned to work after sustaining injury to his upper extremities; his description of Mr. Dean as being "very active;" Mr. Dean's ability to walk up to a half a mile per day in 2010; and the fact that impairments involving Mr. Dean's feet responded well to treatment. R. at 24. Thus, the Court finds that the ALJ was not required to give special weight to the RFC assessments of Mr. Dean's treating sources, but even though she was not required to do so, she adequately explained her reasons for not giving these opinions controlling weight.

### C. The ALJ did not improperly disregard the VE's opinion.

Mr. Dean argues that the ALJ ignored the VE's opinion that he would not be able to perform his past relevant work or any work based upon the RFC determined by Dr. Parmenter. However, as discussed above, the ALJ was not required to rely upon the RFC determination made by Dr. Parmenter, and thus was not required to rely upon the opinion of the VE based upon Dr. Parmenter's RFC assessment.

### D. The ALJ adequately developed the record.

Mr. Dean claims that the ALJ did not adequately develop the record because she used personal extrajudicial sources to evaluate his claims, which was prejudicial. Hearing officers are presumed to be unbiased unless the claimant can prove that the ALJ had a "conflict of interest or some other specific reason for disqualification." *Schweiker v. McClure*, 456 U.S. 188, 195 (1981). Mr. Dean claims that the ALJ used her husband's experience to analyze his claim and ignored that Mr. Dean has Asperger Syndrome. The ALJ did share during the hearing that her husband was in the military; however, nowhere in the ALJ's opinion is this information mentioned and there is no indication that she improperly relied upon this outside information in making her determinations. All of the information regarding Mr. Dean's National Guard

service—including the number of years he served, his rank, and the number of men he supervised—were all provided by Mr. Dean in his testimony. R. at 22.

Mr. Dean also argues that the ALJ improperly used an article mentioning his participation in a rappelling event called "Bridge Day" in 2006, which the ALJ found by researching Mr. Dean on the internet. The ALJ questioned Mr. Dean about Bridge Day during the hearing, and Mr. Dean stated that the last time he went rappelling was in Short Rappels in 2007. R. at 54-55. Even though it is generally improper for an ALJ to use outside evidence, the error is harmless if the "extra-record evidence was incidental" to the decision. *Nelson v. Apfel*, 131 F.3d 1228, 1236-37 (7th Cir. 1997). As discussed above, the ALJ properly supported her conclusions with substantial evidence, all of which is found elsewhere in the record, and did not improperly rely upon extrajudicial sources in her opinion. Thus, the Court finds that the ALJ's mention of her husband's military service and the internet article about Mr. Dean during the hearing does not constitute reversible error.

## V.     CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Mr. Dean's appeal is **DISMISSED**.

SO ORDERED.

Date: 09/26/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Carwina Weng
IU SCHOOL OF LAW LAW CLINICS
wengc@indiana.edu

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov